UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LINNWOOD DAVIS

       Plaintiff,

v.                                           CASE No. 8:07-CV-255-T-TGW

MICHAEL J. ASTRUE,[1]
Commissioner of Social Security,

       Defendant.

---

## ORDER

The plaintiff in this case seeks judicial review of the denial of his claim for Social Security disability benefits.[2] Because the decision of the Commissioner of Social Security is supported by substantial evidence and does not contain reversible error, the decision will be affirmed.

I.

The plaintiff, who was forty-four years old at the time his insured status for disability benefits expired and who has a high school education (Tr.

---

[1] Michael J. Astrue has become the Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, he should be substituted as the defendant in this suit.

[2] The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 15).

12, 82), has been primarily employed in sales (Tr. 109). The plaintiff filed claims for Social Security disability benefits and supplemental security income benefits, alleging that he was disabled due to AIDS and diabetes (Tr. 76). The claims were denied initially and upon reconsideration.

At his request, the plaintiff received a de novo hearing before an administrative law judge. The law judge noted that the plaintiff was last insured for disability benefits on December 31, 2001 (Tr. 12). The law judge found that, as of that date, the plaintiff had severe impairments of HIV positive and diabetes (Tr. 22). He concluded that these impairments limited the plaintiff to light work with the additional restrictions that the plaintiff could only occasionally climb ladders, ropes and scaffolds; required the option to alternate between sitting and standing; and could not perform more than simple repetitive tasks (Tr. 23). The law judge determined that these limitations prevented the plaintiff from performing past work (id.). However, based upon the testimony of a vocational expert, the law judge ruled that, as of December 31, 2001, the plaintiff could perform work that exists in significant numbers in the national economy, such as cashier II, toll collector, and small product assembler (id.). Accordingly, the law judge decided that

the plaintiff was not disabled before his insured status for disability benefits expired.

However, the law judge determined, based upon a medical report of September 23, 2002, that the plaintiff was disabled by that date (id.). The law judge found that, as of that date, the effects of fairly consistent complaints of diarrhea attributed to his medications, as well as fatigue, poor energy, and a significant mental impairment, rendered the plaintiff unable to sustain substantial gainful activity (Tr. 21). As a result of that finding, the law judge decided that the plaintiff was entitled to supplemental security income benefits.

The Appeals Council declined to review the unfavorable portion of the law judge's decision, and the law judge's decision therefore became the final decision of the Commissioner. The plaintiff then timely sought review of the denial of disability benefits.

II.

In order to be entitled to Social Security disability benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which

. . . has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. 423(d)(1)(A). A "physical or mental impairment," under the terms of the Social Security Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 423(d)(3). In this case, in order to receive disability benefits, the plaintiff must show that he became disabled before his insured status expired on December 31, 2001. 42 U.S.C. 423(c)(1); Demandre v. Califano, 591 F.2d 1088, 1090 (5th Cir. 1979), cert. denied, 444 U.S. 952. There is not a similar requirement with respect to the plaintiff's claim for supplemental security income payments.

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record

compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004)(en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

III.

For the plaintiff to prevail on his claim for disability benefits, the evidence must compel a finding that his condition was disabling on, or before, December 31, 2001, when his insured status expired. The law judge found that, at that point, the plaintiff was suffering from HIV and diabetes (Tr. 22). The law judge decided that, despite these impairments, the plaintiff could perform a range of light work and was not disabled (Tr. 23).

However, the law judge considered the plaintiff's condition further in connection with his claim for supplemental security income benefits. Based upon a report from Dr. Morris Kutner following a consultative examination on September 23, 2002, the law judge concluded that, due to the combined effects of diarrhea from medications, fatigue, poor energy, and a significant mental impairment, the plaintiff was unable to sustain gainful activity (Tr. 21). Therefore, as of that date, the plaintiff was considered disabled (Tr. 23).

In challenging the adverse portion of the law judge's decision, the plaintiff contends first that it was arbitrary to take the date of the consultative examination as the disability onset date. He argues further that

a medical expert should have been called to determine the onset date (Doc. 18, p. 5).

This argument, however, lacks any persuasive force. To begin with, the evidence does not even compel a finding that the plaintiff was disabled by September 23, 2002; rather, the law judge may have been somewhat generous in making that determination.

Dr. Kutner, following his examination, stated that the plaintiff's "physical exam was essentially normal" (Tr. 208). He opined that the plaintiff's HIV medications "will give side effects such as diarrhea and peripheral neuropathy and this would cause some disability in this claimant [and] would make it difficult for him to have a job" (id.). In this respect, Dr. Kutner appears to have given substantial weight to the plaintiff's subjective complaints, complaints that are lacking in the record prior to that time (Tr. 206, 207). Consequently, the law judge could have reasonably found that the plaintiff was not disabled as of September 23, 2002, as two reviewing physicians concluded (Tr. 211, 231).

In all events, the evidence does not compel a finding that the plaintiff was disabled prior to that date, and certainly not by December 31, 2001. The primary basis for Dr. Kutner's view that it would be difficult for

the plaintiff to have a job was the plaintiff's complaint of diarrhea (Tr. 208). However, the record does not establish that the plaintiff suffered from chronic diarrhea on, or before, December 31, 2001. Thus, the plaintiff denied having diarrhea when seen in an emergency room on November 6, 2000, for a complaint of a persistent cough (Tr. 153). Moreover, he was not reported to complain of diarrhea until his September 23, 2002, visit with Dr. Kutner (Tr. 207). Furthermore, as the law judge noted (Tr. 15), the plaintiff did not mention diarrhea when he filed his disability report in July 2002, but did state in his reconsideration disability report in December 2002 that his "condition has worsened" and that he "suffer[s] with chronic diarrhea" (Tr. 89).

In light of the lack of any medical evidence demonstrating that the plaintiff was suffering from diarrhea prior to September 23, 2002, it is not illogical to assume, for the purpose of establishing a disability onset date, that the disability started on that date. Moreover, if one were to speculate about whether the plaintiff was disabled prior to that date, it is more logical to assume that the plaintiff was not disabled from diarrhea by that date either.

On this issue, the plaintiff also mentions that he suffers from neuropathy. The law judge, however, evaluated the evidence concerning that condition and concluded that it was not disabling (Tr. 15). The plaintiff

makes no attempt to show that the law judge's conclusion is not supported by substantial evidence (Doc. 18, p. 6). Furthermore, while Dr. Kutner stated that the plaintiff's antiviral medications will give side effects such as peripheral neuropathy, he concluded that the plaintiff's "physical exam was essentially normal" (Tr. 208). Accordingly, Dr. Kutner's report does not even compel a finding that the plaintiff was disabled due to neuropathy as of September 23, 2002, much less that the condition was disabling as of December 31, 2001.

The evidence therefore clearly supports the law judge's conclusion that on, or before, December 31, 2001, the plaintiff was not disabled due to chronic diarrhea or peripheral neuropathy. Under these circumstances, there would be no reason to employ a medical expert to attempt to infer a disability onset date: Whatever date he came up with could not reasonably be on, or before, December 31, 2001.

Moreover, in light of the consultative examination by Dr. Kutner on September 23, 2002, there was no gap in the record that a nonexamining doctor needed to fill. The record already contained two opinions by nonexamining medical doctors and each opined that as of the date last insured and, also, as of the date of their evaluations (namely, 10-09-02 and 3-14-03)

the plaintiff could perform light work (Tr. 210, 211, 230, 231). Thus, from all that appears, if a medical expert had been called to testify, he may well have opined that the plaintiff was not disabled as of September 23, 2002. Therefore, the plaintiff may have benefitted from the absence of such an expert.

The plaintiff contends next that the law judge improperly rejected the plaintiff's complaints of fatigue, diarrhea, and pain (Doc. 18, p. 7). The Eleventh Circuit has established a standard for evaluating pain and other subjective complaints. As the court of appeals explained in Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986), the pain standard "required evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain."

The law judge recognized the proper standard for evaluating subjective complaints (Tr. 14). The law judge also found the plaintiff credible for the period September 23, 2002, to the present (Tr. 21). On the other hand, the law judge expressly found that, for the period from July 1, 1998, to September 22, 2002, "the claimant's allegations regarding his

limitations are not totally credible for the reasons set forth in the body of the decision" (Tr. 22-23).

The plaintiff argues that "there are no reasons for rejecting the claimant's complaints of pain, fatigue and diarrhea that are supported by substantial competent evidence" (Doc. 18, pp. 7-8). If the plaintiff is asserting that the law judge's credibility determination is not supported by substantial evidence, this contention is rejected because the plaintiff has not developed any such argument (see Doc. 13) (Scheduling Order requires challenges to be supported by citations to the record of the pertinent facts). If the plaintiff is asserting that the law judge gave no reasons for his credibility determination, that contention is inaccurate since the law judge did explain his credibility findings. While those findings are set out in the context of the law judge's discussion of the plaintiff's assertion that he meets, or equals, an Appendix 1 listing, there is nothing improper or inadequate about that approach. In this respect, the law judge stated (Tr. 14-15):

> Although the claimant was hospitalized in August 1998 for symptomatology referenced in listing 11.04 such as numbness of his left hand and left arm and difficulty with speaking clearly, it was noted at discharge that his condition was greatly improved as the symptoms have cleared. Thereafter, the next time any comprehensive

clinical findings were reported was during a period of hospitalization for pneumonia in November 2000 and no references to speech difficulty or numbness were made. In fact, examination of the central nervous system noted no focal deficits, normal motor power, normal reflexes, and no sensory deficits. ... While there was some disorganization of motor function demonstrated during this period of hospitalization in August 1998, the above also clearly shows that it was not persistent. ... Claimant's attorney argues in her letter of April 8, 2005 that the claimant was see[n] on November 30, 2001 and diagnosed with neuropathy causing great difficulty ambulating due to leg cramps and burning on his feet. Progress notes for that date show that the claimant was seen for follow up of his diabetes. He was noted to be doing fair. The claimant reported that he was having leg cramps at night and on examination his feet were noted to be numb. There was no indication given in the clinical notes that the claimant was having any difficulty ambulating due to leg cramps nor was burning in the feet noted as was alleged. Since the leg cramps were only reported as occurring at night, it is not credible that they would be causing "great difficulty ambulating" such that there would be any significant vocational impact. After the date last insured, the claimant reported in February 2002 that he had tingling in his feet for 2 years and, on examination[,] neuropathy was noted at both plantar 5th metatarsal heads and paresthesia to the distal one-third of the tibia. Nevertheless, there was no report of any difficulty ambulating. In April 2002, the claimant was reportedly seen for follow up of burning in his feet and continued pain, especially the first thing in the morning. Again, no

> difficulty ambulating was noted or reported. On consultative examination in September 2002, the claimant reported having severe peripheral neuropathy, among other things, but on examination, he was shown to have normal strength in all extremities without deficits, normal sensation, normal tandem gait, no need for an assistive device, and the ability to walk heel to toe, get on and off the exam table without difficulty, and to walk without a limp.

The law judge added (Tr. 16):

> While there was some evidence of numbness of the feet and leg cramps in November 2001, neuropathy in February 2002, and burning of the feet in April 2002, little vocational impact as a result thereof is shown.

With respect to plaintiff's diarrhea, the law judge stated (Tr. 15):

> [O]n or about July 2002, the claimant then reported weighing 215 pounds without shoes and made no report of any diarrhea. In filing his reconsideration disability report in December 2002 [Exhibit B3E], the claimant reported a worsening of his condition and reported suffering from chronic diarrhea, among other things. That same month in another report [Exhibit B5E], the claimant reported that diarrhea was a side effect of prescribed medication. From the alleged onset date through September 23, 2002, there is no reported diarrhea.

In short, the law judge concluded that the plaintiff's testimony was not credible to the extent that the plaintiff asserted that he was totally

disabled by December 31, 2001. Moreover, the law judge adequately explained that conclusion by reference to the medical evidence that was in the record. Accordingly, there is no justification for overturning the law judge's credibility determination.

The plaintiff's final argument, which consists of only four sentences, is that the law judge should have found the plaintiff disabled because he meets, or equals, listing 14.08(H)(2) in Appendix 1 regarding HIV infection (Doc. 18, p. 8). The listings set forth conditions that are so severe that, if a listing is met, or equaled, a claimant is considered disabled without regard to vocational considerations. See 20 C.F.R., Part 404, Subpart P, App. 1. The plaintiff has made no meaningful attempt to show that, as of December 31, 2001, he suffered from such a debilitating condition.

The plaintiff's failure adequately to develop his contention violates the Scheduling Order. As indicated, that Order provides that "any ... discrete challenges must be supported by citations to the record of the pertinent facts and by citations of the governing legal standards" (Doc. 13, p. 2). The plaintiff on this issue does not cite to any evidence in the record. That deficiency is particularly significant in light of the complicated criteria

of listing 14.08. Consequently, this contention is appropriately deemed abandoned.

In all events, the plaintiff has the burden to prove that, prior to the expiration of his insured status, he met, or equaled, listing 14.08 in Appendix 1. Wilkinson o/b/o Wilkinson v. Bowen, 847 F.2d 660, 662 (11th Cir. 1987). Moreover, "when a claimant contends that he has an impairment meeting the listed impairments entitling him to an adjudication of disability under regulation 404.1520(d), he must present specific medical findings that meet the various tests listed under the description of the applicable impairment or, if in the alternative he contends that he has an impairment which is equal to one of the listed impairments, the claimant must present medical evidence which describes how the impairment has such an equivalency." Bell v. Bowen, 796 F.2d 1350, 1353 (11th Cir. 1986). The plaintiff has clearly failed to make such a showing.

Furthermore, the law judge expressly found, in detail, that the plaintiff did not meet, or equal, the requirements of listing 14.08, as well as listings 11.04 and 9.08 (Tr. 14-16). Particularly in light of the plaintiff's failure to point to any specific medical findings demonstrating that, as of December 31, 2001, he met, or equaled, listing 14.08, there certainly is no

basis for concluding that the evidence compels a finding contrary to the law judge's determination. In essence, his contention is baseless.

It is, therefore, upon consideration

ORDERED:

That the decision of the Commissioner of Social Security is hereby AFFIRMED. The Clerk shall enter judgment in accordance with this Order and CLOSE this case.

DONE and ORDERED at Tampa, Florida, this 4th day of July, 2008.

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE